ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| ASOCIACIÓN DE RESIDENTES DE ESTANCIAS DE YAUCO, INC., Apelada, v. DESARROLLOS GJOM, INC., Apelante. | KLAN202400215 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Ponce. Civil núm.: PO2022CV03027. Sobre: *injunction* (entredicho provisional, *injunction* preliminar y permanente). |
|---|---|---|

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 27 de junio de 2024.

El 5 de marzo de 2024, la parte apelante, Desarrollos GJOM, Inc. (Desarrollos), instó este recurso con el fin de que este Tribunal revoque la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 25 de enero de 2024[1], notificada en esa misma fecha. En su determinación, el foro primario declaró con lugar la demanda y, en su consecuencia, ordenó la paralización de ciertas obras llevadas a cabo por Desarrollos, por esta no contar con la totalidad de las autorizaciones y permisos correspondientes.

Evaluado el escrito y su apéndice y la oposición de la parte apelada, confirmamos la *Sentencia* apelada.

I

Este caso inició con la presentación de una demanda de interdicto presentada por la Asociación de Residentes de Estancias de Yauco, Inc. (Asociación), el 2 de noviembre de 2022[2]. En ella, la Asociación adujo que Desarrollos era la dueña de un predio de terreno colindante con la

---

[1] *Véase*, apéndice del recurso, a las págs. 581-611.

[2] *Íd.*, a las págs. 1-21.

urbanización Estancias de Yauco[3], que ubica en ese municipio. Planteó que Desarrollos, sin contar con los permisos correspondientes, llevaba a cabo trabajos en el predio colindante, que afectaban a los miembros de la Asociación. Adicionalmente, alegó que Desarrollos había informado que proyectaba construir siete (7) residencias en su predio, cuyo acceso sería a través de la urbanización Estancias de Yauco.

La Asociación solicitó que el foro primario emitiera una orden de cese y desista, así como un entredicho provisional, un *injunction* preliminar y permanente en contra de Desarrollos. También, solicitó que el tribunal ordenara que Desarrollos construyera un muro de contención en su predio, con el fin de que se evitara y previniera la erosión del terreno.

El 3 de noviembre de 2022, a las 4:00 pm, el tribunal emitió una *Orden de Entredicho Provisional*[4], en la que dispuso para el cese y desista de toda obra de remoción de terreno o de tierra en la colindancia entre el predio de Desarrollos y la urbanización[5]. Citó a la vista del *injunction* preliminar para el 14 de noviembre de 2022. A solicitud de la Asociación, la vista fue transferida para el 18 de noviembre de 2022[6].

Mientras, el 11 de noviembre de 2022, Desarrollos presentó su contestación a la demanda[7]. Entre los hechos admitidos, reconoció que contaba con un permiso para la construcción de un muro de contención y que cualquier movimiento de terreno que se hubiera llevado a cabo estaba relacionado con la construcción de dicho muro. Afirmó que el muro de contención se había ideado para la protección de la urbanización. Admitió, además, que tenía proyectado construir varias viviendas en su predio.

---

[3] Conforme a las alegaciones de la demanda, el predio de Desarrollos ubica en el lado sur de la Calle 13 de la urbanización.

[4] *Véase*, apéndice del recurso, a las págs. 24-29.

[5] *Íd.*, a las págs. 30-33.

[6] *Íd.*, a la pág. 52.

[7] *Íd.*, a las págs. 45-47.

El 18 de noviembre de 2022, el tribunal celebró la vista[8]. Discutidos varios aspectos del caso, el tribunal concluyó que el remedio adecuado en derecho era el recurso interdictal contemplado en el Art. 14.1 de la Ley de Permisos, *infra.* Por tanto, le concedió un breve término a la Asociación para enmendar su demanda; ello, so pena de la desestimación del pleito.

El 22 de noviembre de 2022, la Asociación presentó su demanda enmendada[9]. Esta vez se amparó en el *injunction* estatutario reconocido en el Art. 14.1 de la Ley de Permisos.

El 7 de diciembre de 2022, Desarrollos presentó su contestación a la demanda enmendada[10]. En síntesis, adujo que contaba con el permiso de la Oficina de Gerencia de Permisos (OGPe) para construir el muro de contención entre las fincas, y que cualquier molestia sufrida por la Asociación, cualquier movimiento de terreno o polvo que se hubiera generado era parte de la preparación de su terreno para la construcción del muro. Es decir, el argumento en que Desarrollos basó sus defensas y su postura en el caso fue que la construcción del muro de contención, según aprobado por la OGPe, conllevaba la "preparación del terreno" y que sus acciones – aun cuando generasen ciertas molestias a los vecinos - siempre estuvieron cobijadas por el permiso otorgado.

Más adelante en el pleito, el foro primario emitió una orden el 21 de agosto de 2023[11], que leía como sigue:

> A fines de aclarar cualquier duda con la orden del tribunal en la vista del 18 de noviembre de 2022, se prohíbe el acceso, ya sea de personas, equipo o maquinaria de la parte demandada [Desarrollos], a los predios de la urbanización Estancias de Yauco, lo cual incluye todas sus calles, incluyendo la Calle 13. La parte demandada podrá continuar realizando las labores para la cual obtuvo el permiso de construcción desde sus predios y mediante su propio acceso al mismo, el cual informó en la vista que no estaba enclavado. Se apercibe a la parte demandada que cualquier violación a esta orden y/o la orden del 18 de noviembre de 2022 se le impondrá sanciones económicas y/o desacato.

---

[8] *Véase*, minuta de la vista, a las págs. 104-106 del apéndice del recurso.

[9] *Véase*, apéndice del recurso, a las págs. 107-114. Posteriormente, el 23 de noviembre de 2022, la demanda enmendada fue presentada nuevamente para incluir la declaración jurada de la presidenta de la Asociación. *Íd.*, a las págs. 115-123.

[10] *Íd.*, a las págs. 126-129.

[11] *Íd.*, a las págs. 583-584.

El 8 de septiembre de 2023, Desarrollos presentó su contestación a la demanda enmendada[12], en la cual negó la mayoría de las alegaciones. En síntesis, adujo que contaba con autorización para clausurar la Calle 13 y que las vallas que colocó tuvieron el propósito de proteger la propiedad de la Asociación. Alegó que la Asociación no fue quien tomó las medidas para evitar las descargas de agua[13].

El 27 de noviembre de 2023, se celebró la vista de *injunction*[14]. La Asociación presentó el testimonio del Ing. Julio González Fortuño, quien fue cualificado como perito en ingeniería ambiental y sobre asuntos relacionados a permisos ante la OGPe. Además, se admitió su *curriculum vitae* y, durante el interrogatorio directo, se admitió el informe pericial suscrito por él. Por su parte, el representante legal de Desarrollos tuvo oportunidad de contrainterrogar al ingeniero González Fortuño.

La vista de *injunction* continuó el 8 de diciembre de 2023[15].

Recibida y aquilatada la prueba, el foro primario emitió su *Sentencia* el 25 de enero de 2024[16]. En ella, declaró con lugar la demanda, emitió una orden de paralización y decretó el cese y desista de las obras iniciadas por Desarrollos en la finca en controversia, toda vez que no contaba con la totalidad de los permisos correspondientes, conforme a las leyes y los

---

[12] *Véase*, apéndice del recurso, a las págs. 348-349.

[13] *Íd.*, a las págs. 260-278. El 6 de septiembre de 2023, la Asociación notificó el informe pericial del Ing. Julio González Fortuño.

[14] *Véase*, apéndice del recurso, a las págs. 554-565. En la vista, las partes estipularon la siguiente prueba documental: Exhibit I – Permiso de Construcción (6 folios); Exhibit II – Certificación de cumplimiento ambiental por exclusión categórica (4 folios); Exhibit III – Plano del muro de contención; Exhibit IV – Escritura número 31 sobre rectificación de cabida ante el notario Gamaliel Troche Albarrán (4 folios); Exhibit V – Escritura 32 sobre segregación, compraventa y agrupación ante el notario Gamaliel Troche Albarrán (11 folios); Exhibit VI – Escritura 33 sobre compraventa ante el notario Gamaliel Troche Albarrán (11 folios); Exhibit VII – Notificación de cierre parcial calle 13-8 Estancias de Yauco, 17 de agosto de 2023 (1 folio); Exhibit VIII – Notificación de cierre parcial calle 13-8 Estancias de Yauco, 10 de julio de 2023. (1 folio); Exhibit IX – Escritura de condiciones restrictivas (8 folios).

[15] *Véase*, apéndice del recurso, a las págs. 570-573. En la continuación de la vista, las partes litigantes añadieron como prueba estipulada la siguiente prueba documental: Exhibit X - foto de camión en la finca 13,876, descargando tierra (1 folio); Exhibit XI - foto de máquina trabajando en la finca 13,876 (1 folio); Exhibit XIII - foto del terreno de caminos hechos en el terreno; Exhibit XIII - foto de movimiento del terreno y relleno; Exhibit XIV - foto de terreno con vegetación; Exhibit XV - foto de terreno bajo lluvia y los dos caminos abiertos por Desarrollos para dar acceso a la Calle 13 de la urbanización Estancias de Yauco (2 folios); Exhibit XVI - foto del terreno cortado por el sur de la Calle 13; Exhibit XVII - foto del terreno marcado desde la carretera núm. 3334.

[16] *Véase*, apéndice del recurso, a las págs. 581-611.

reglamentos aplicables. Además, consignó los hechos que entendió probados:

1.  Se incorporan las estipulaciones de hechos previamente expresadas y presentadas por las partes el 6 de noviembre de 2023, mediante MOCIÓN CONJUNTA; se hacen constar como determinaciones de hechos de la presente SENTENCIA.

    Testimonio del ingeniero Julio González Fortuño, perito de la parte demandante:

2.  El perito de la parte demandante, el ingeniero Julio González Fortuño, es ingeniero ambiental y un Profesional Autorizado conforme lo dispone la Ley 161. Entre los documentos que está autorizado a expedir se incluye el documento de cumplimiento ambiental por exclusión categóricas.

3.  El ingeniero González obtuvo copia del trámite en OGPe relacionado a la controversia del caso, accedió a los sistemas de la Junta de Planificación para obtener información general de las parcelas relacionadas al caso, evaluó los estudios de título y visitó en 3 ocasiones los predios en controversia.

4.  Indicó que la finca está ubicada en el Barrio Barinas en Yauco en la carretera 3334, finca segregada de la 13860 y que, conforme a los estudios de títulos examinados, la finca donde se realiza la construcción esta denominada como área comercial.

5.  El ingeniero González declaró que una exclusión categórica es que la Junta de Planificación conoce de antemano los impactos que puede causar una acción a llevase a cabo. Cuando en el listado se encuentra la acción y cumple con las descripciones generales de la exclusión categórica, se le puede otorgar la exclusión. Es un proceso bastante sencillo y en el que se permite proceder con el permiso de construcción ya que se conoce cuál puede ser el impacto al medioambiente.

6.  El perito opinó que, con la exclusión categórica, según concedida para la construcción en controversia, lo que está haciendo la parte demandada [Desarrollos] es fragmentar el proyecto y desarrollo que va a llevar a cabo.

7.  Indicó que la finca 13876 donde se realiza el proyecto de la parte demandada no pertenece al proyecto Estancias de Yauco, ni es un remanente de dicha urbanización.

8.  El ingeniero González explicó que cuando utiliza la expresión fragmentar se refiere a que, dentro de la evaluación que hicieron del caso, fue al sistema de la Junta de Planificación y buscaron la parcela y vio todos los casos que habían radicados para esa parcela. Encontró que había varios casos radicados, unos cerrados y varios aprobados, entre ellos, la exclusión categórica en controversia y el permiso de construcción, pero que anterior a ello habían hecho unas recomendaciones por la Autoridad de Carreteras, en la cual se había solicitado las recomendaciones para la construcción de 7 unidades de viviendas en primer lugar, y luego la solicitud fue enmendada a una solicitud de consulta de 5

unidades de viviendas. El perito expresó que entre las recomendaciones realizadas por la agencia pertinente fue que había que realizar un diseño de las entradas y de cómo iba a quedar geométricamente la urbanización. La entrada de dicho desarrollo sería por la carretera 3334, por el lado sur de la propiedad en controversia. El norte, oeste y este de la propiedad de la parte demandada colinda con la propiedad de la parte demandante [Asociación].

9. El ingeniero González declaró que cuando ven que la intensión del desarrollador es hacer unidades de viviendas, el método de permisología cambia totalmente, porque ya entonces se tiene que entrar en lo que son las recomendaciones ambientales; hay que hacer una evaluación ambiental del predio, luego evaluar los parámetros de cada vivienda y los parámetros de cómo queda la urbanización.

10. El perito declaró que el permiso obtenido por la parte demandante es un permiso de exclusión categórica para la construcción de un muro de contención.

11. El ingeniero González indicó que no se podía otorgar la exclusión categórica para únicamente la construcción del muro de contención. Expresó que por lo que pudo observar en la propiedad en controversia, allí se desarrolla un proyecto fragmentado, para el cual se debe ir a OGPe con el proyecto completo con la información de todo lo que se quiere hacer o desarrollar dentro de la parcela conforme al Reglamento de Evaluación y Trámite de Documentos Ambientales de la Junta de Calidad Ambiental el cual dispone que no se fraccionará o segmentará obra o acción alguna con el fin de evitar llevar a cabo un proceso de planificación ambiental completo.

12. El perito opinó que la parte demandada fraccionó la actividad que iba a llevar a cabo y que procedieron con una exclusión categórica para un muro de contención primero.

13. En ingeniero González opinó que la parte demandada realiza actos de urbanización y no de un muro de contención. En su visita al lugar en controversia pudo observar que estaban haciendo una entrada a través de la calle vecinal de Estancias de Yauco e hicieron un corte de corteza terrestre sin permiso. También observó que el terreno estaba siendo marcado como usualmente se realiza en las obras de construcción.

14. El ingeniero González declaró que el corte de terreno realizado desestabilizó las aguas de escorrentías sin haberse evaluado hacia dónde iban a discurrir dichas aguas durante la construcción y luego durante el desarrollo.

15. El perito declaró que en el área hubo un desmonte de vegetación. Manifestó que se desprende de la prueba documental que en el lugar en controversia había árboles flamboyán, típicos del área, que fueron desmontados sin hacer una certificación de *habitat* que indicara si había flora o fauna en peligro de extinción.

16. El ingeniero González declaró que la parte demandante no obtuvo el permiso general consolidado, el cual incluye el plan de control de erosión y sedimentación que se requiere

cuando se desmonta la corteza terrestre. Indicó que dicho permiso también requiere un plan para la disposición de desperdicios sólidos o DS3 que se generan como producto del desmonte de la vegetación. Indicó que de las fotos se desprende que toda la vegetación desmontada fue dejada en el predio. Manifestó que también era necesario el Permiso de Fuente de Emisión que incluye el plan para mitigar los polvos que levantan las máquinas, entre otras.

17. El perito expresó que las obras que realiza la parte demandada no cuentan con el Permiso Único Incidental o PUI, el cual incluye la autorización para el movimiento de terreno y la autorización para el corte, trasplante y siembra de árboles. Expresó que el PUI debe ser solicitado siempre que haya una limpieza de una propiedad de más de 900 metros cuadrados. Indicó que el DS3 es necesario si se va a disponer de más de 15 yardas cúbicas, si se va a perturbar más de 900 metros de corteza terrestre que va a generar polvo fugitivo.

18. El ingeniero González declaró que se debió redactar y evaluar una Recomendación de Evaluación Ambiental o REA, la cual definió como una redacción de un documento donde se describe "a la saciedad" todas las actividades que se van a llevar a cabo en un predio antes de desarrollarlo. A tal grado que se estudia todo lo que es la fauna y la flora del área y se estudia la mitigación que se tuviese que llevar a cabo por las actividades de construcción. Expreso que ese documento se radica ante la OGPe y todas las agencias gubernamentales lo evalúan y dan las recomendaciones a la OGPe. A su vez, esta oficina provee esas recomendaciones de evaluación ambiental para entonces revisar el documento ambiental radicado e incluir todas las recomendaciones que dan las agencias como requisito para ser aprobados los permisos.

19. El perito opinó que la parte demandante utilizó una exclusión categórica para evitar el proceso del PUI y REA. Manifestó que la exclusión categórica se expide por certificado en aproximadamente uno o dos días. Por el contrario, la recomendación ambiental tiene 30 días mínimo y luego la declaración ambiental 30 adicionales, lo que sumaría un periodo mínimo de 60 días.

20. El ingeniero González declaró que para la preparación de un muro de contención no es necesario remover la corteza terrestre ni preparar los solares como lo está realizando la parte demandada. Indicó que la parte demandante no tenía permitido marcar solares porque no tenía permiso de urbanización.

21. Expresó que la intención de fragmentar un proyecto es agilizar los permisos y es una determinación que hace la parte interesada cuando va a desarrollar un proyecto. Básicamente le van proveyendo información a la OGPe como "a cuenta gota, poco a poco". Indicó que la parte demandada, en algún momento, iba a encontrarse "con la pared" porque "de ninguna manera" en el reglamento se puede desarrollar 5 unidades en un predio sin pasar por una consulta de construcción o una consulta de ubicación.

22. El perito declaró que no tenía los datos totales para poder llevar a cabo la evaluación de los parámetros de las obras de construcción realizadas por la parte demandada, pero indicó

que el reglamento es claro e indica que no se puede fragmentar la información hacia las agencias.

23. Conforme al testimonio del perito, el permiso de construcción otorgado incluye la certificación de exclusión categórica y esta, a su vez, dispone de unas condiciones generales, las cuales indican que no se fragmentara o segmentara la acción propuesta en diferentes etapas con el fin de evadir los requisitos de un documento ambiental.

24. El perito opinó que cuando se fragmentan las obras de desarrollo de una propiedad y no se evalúan todos los elementos ambientales como la flora, la fauna y la vegetación, entre otras como la infraestructura, el permio quedaría nulo.

25. El ingeniero González opinó que el plano del muro de contención presentado por la parte demandada es un plano simple de un muro de contención que presenta una entrada y haciendo un predio para un desarrollo. Declaró que en dicho plano faltan las especificaciones técnicas de la obra de construcción del muro de contención a construirse en la finca 13876 propiedad de la parte demandada.

26. Conforme a la observación realizada por el perito en la finca en controversia la parte demandada ha realizado 2 caminos, uno en el área que se marca en el plano del muro y otro en lo que aparenta ser un área de acceso.

27. El ingeniero González declaró que la parte demandada no tenía permiso para romper la corteza terrestre para un acceso adicional al presentado en el plano del muro de contención.

28. El ingeniero González, quien es un Profesional Autorizado conforme la Ley 161, declaró que la parte demandada está en incumplimiento con el Estado en cuanto a la permisología, por realizar gestiones distintas a las que están autorizadas. El incumplimiento está basado en la fragmentación del caso en OGPe. Indicó que la información que proveyó la demandada fue información segmentada para un muro de contención, pero no para la otra parte de las obras. Manifestó que la parte demandada tenía que, desde un principio, proveer e informar la totalidad de las obras en desarrollo.

29. Indicó que el permiso de construcción en controversia fue solicitado bajo el renglón de uso residencial cuando debió de ser bajo urbanización.

30. El perito declaró que la fragmentación ocurrida en este caso no es en cuanto a la construcción del muro de contención, sino de la totalidad de las obras que se están realizando en el predio de terreno en controversia.

31. El ingeniero González manifestó que la parte demandada limpió 3,786 metros cuadrados de superficie cuando el muro de contención en controversia es para ser construido en el perímetro del área norte de la finca, lo que indicó es un movimiento de corteza terrestre sin permisos.

32. El perito indicó que el movimiento de corteza terrestre realizado por la parte demandada es compatible con la

construcción de una urbanización y no con la construcción de un muro de contención.

A la luz de los hechos que el foro primario concluyó que habían sido probados, determinó que en la finca se había iniciado una obra sin contar con los debidos permisos y que dichas actividades estaban impactando la totalidad de la finca. En específico, apuntó que las obras adicionales sobrepasaban el permiso obtenido para la construcción del muro de contención. Enfatizó que Desarrollos llevó a cabo movimientos de la corteza terrestre en más de 3,000 metros cuadrados sin los permisos correspondientes, así como corte de árboles y remoción de vegetación sin autorización. De igual forma, el foro primario destacó que Desarrollos realizó marcado de terreno y habilitó accesos que no estaban aprobados.

Conforme a la prueba documental presentada y el testimonio pericial del ingeniero González Fortuño, al cual le adjudicó entera credibilidad, el foro primario coligió que la construcción del muro de contención era, únicamente, una parte de la obra que se desarrollaba en la finca. Además, resaltó que la OGPe no había emitido el permiso para la totalidad de la obra que se llevaba a cabo. Así pues, razonó que el permiso concedido por la OGPe no podía interpretarse como una autorización para realizar cualquier movimiento de tierra u obra que Desarrollos entendiera necesario.

Por último, el tribunal concluyó que, indistintamente de cuál fuera la obra que realizaba Desarrollos, esta no podía iniciar o realizar una obra que pudiera tener algún impacto ambiental sin antes haber cumplido con las disposiciones legales correspondientes. Tampoco le estaba permitido fraccionar o segmentar la obra con el fin de evadir llevar a cabo un proceso de planificación ambiental completo.

Inconforme con la determinación del foro primario, el 5 de febrero de 2024, Desarrollos presentó su moción de reconsideración[17]. Además, solicitó enmiendas o determinaciones iniciales o adicionales de hechos y conclusiones de derecho. En esencia, adujo que no se podía fragmentar

---

[17] *Véase*, apéndice del recurso, a las págs. 624-636.

un proyecto si no existía evidencia alguna de cuál era dicho proyecto. Sostuvo que el ingeniero González Fortuño contestó en la negativa con relación a si se estaban construyendo carreteras, aceras, alcantarillados, segregando solares, entre otros. Por último, planteó que era consciente de que tenía que solicitar los permisos a OGpe, si deseaba realizar otros proyectos. Por todo lo anterior, solicitó la reconsideración de la sentencia.

El 6 de enero de 2024, el foro primario emitió una *Resolución*[18], notificada en esa misma fecha, en la cual declaró sin lugar la moción de reconsideración.

Inconforme aún, Desarrollos instó este recurso el 5 de marzo de 2024, y adujo la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia al no aplicar la disposición del referido Artículo 14.1 de la Ley 161-2009 que expresamente le prohíbe al Tribunal ordenar la paralización de una obra para la cual exista un permiso debidamente expedido y al aplicar en forma incorrecta dicho Artículo 14.1. El citado Artículo 14.1 específicamente indica que el Tribunal podrá emitir un Injection [*sic*], Mandamus, Sentencia Declaratoria o cualquier acción adecuada para: **1.** la revocación de un permiso otorgado cuya solicitud se haya hecho utilizando información incorrecta o falsa, **2.** [l]a paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado, **3.** [l]a paralización de un uso no autorizado y **4.** [l]a demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.

> Erró el Tribunal de Primera Instancia al llegar a 32 determinaciones de hechos, en adición [*sic*] a las 11 estipulaciones de hechos que sometieron las partes, todas las cuales se refieren a la opinión del perito y único testigo de la parte demandante, Ingeniero Julio González Fortuño, muchas de las cuales no estaban sostenidas por el testimonio de dicho perito. Como consecuencia de lo anterior[,] las determinaciones de hechos del Tribunal de Primera Instancia no están sustentadas por la prueba desfilada ante el foro primario, o sea, este incurrió en error manifiesto al aquilatar la prueba[,] la cual se distancia de la realidad fáctica de los hechos.

> Erró el Tribunal de Primera Instancia al denegar la moción de reconsideración, solicitud de determinaciones de derecho y de hechos adicionales, aun cuando en la misma se señaló que el perito González Fortuño, en el contrainterrogatorio admitió hechos que contradecían su testimonio anterior.

---

[18] *Véase*, apéndice del recurso, a las págs. 636-637.

(Énfasis en el original).

En síntesis, la parte apelante sostiene que la prueba desfilada en el juicio en su fondo no configuraba una violación al Art. 14.1 de la Ley de Permisos, *infra*, por lo que el foro primario estaba impedido de conceder el *injunction* estatutario allí dispuesto. Además, aduce que el perito de la Asociación se contradijo en su testimonio en sala y, por tanto, el tribunal erró al adjudicarle credibilidad al mismo.

Por su parte, la Asociación planteó que había logrado probar que el permiso con el que contaba Desarrollos se limitaba a la construcción de un muro de contención. No obstante, mediante sus actuaciones, Desarrollos lo que hizo fue fragmentar indebidamente la obra, por lo que los trabajos que se realizaron en su predio no resultaban afines con el permiso otorgado por la OGPe. Además, adujo que la prueba desfilada había demostrado que la información sometida a la OGPe para la obtención del permiso de construcción del muro era falsa; en particular, la información sometida para conseguir que su obra se beneficiara de una exclusión categórica, que le eximía de cumplir con los criterios de cumplimiento ambiental.

II

A

La Asamblea Legislativa aprobó la Ley Núm. 161 de 1 de diciembre de 2009, *Ley para la reforma del proceso de permisos de Puerto Rico*, según enmendada, 3 LPRA sec. 9011, *et seq.* (Ley de Permisos)*,* con miras a establecer el marco legal y administrativo integrado que regiría los procesos de solicitud, evaluación, concesión y denegatoria de permisos de uso, construcción y desarrollo de terrenos en Puerto Rico. *Exposición de Motivos*, Ley de Permisos; *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014).

El estatuto fue promulgado con el fin de facilitar y propiciar el desarrollo integral, económico, social y físico de Puerto Rico. *Exposición de Motivos*, Ley de Permisos. Por virtud de la legislación, se crearon varios organismos destinados a atender los diversos aspectos del proceso de

permisos, entre los cuales está la Oficina de Gerencia de Permisos (OGPe). La OGPe es la entidad encargada de la evaluación, concesión o denegatoria de determinaciones finales y permisos relativos al desarrollo y el uso de terrenos, así como de las consultas de ubicación. 23 LPRA sec. 9012d.

En lo atinente a la controversia ante nuestra consideración, el Art. 14.1 de la Ley de Permisos, establece:

> La [Junta de Planificación], así como cualquier Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público **o una persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de *injunction* […] o cualquier otra acción adecuada para solicitar: 1) la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado […] Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico**, alegando los mismos hechos, una parte adversamente afectada podrá presentar un recurso extraordinario en el Tribunal de Primera Instancia.

23 LPRA sec. 9024. (Énfasis nuestro).

Uno de los remedios disponible conforme a este artículo es el interdicto estatutario. A pesar de que la jurisprudencia no ha analizado la figura del interdicto estatutario de la Ley de Permisos, sí la ha definido en el contexto de otras legislaciones[19]. Por ejemplo, el Tribunal Supremo de Puerto Rico, al analizar la figura del interdicto estatutario de la Ley Núm. 76 de 24 de junio de 1975, conocida como *Ley Orgánica de la Administración de Reglamentos y Permisos*, 23 LPRA sec. 71, *et seq.*[20], establece las

---

[19] Véase, sin embargo, la opinión disidente del juez asociado, señor Estrella Martínez, en *B. Billboard BG, LLC v. Out of Home Media, LLC*, res. de 22 de mayo de 2024, 2024 TSPR 51. El juez Estrella Martínez analiza la figura del *injunction* estatutario consignada en el Art. 14.1 de la Ley de Permisos *vis à vis* la del *injunction* tradicional consignada en la Regla 57 de las de Procedimiento Civil, 32 LPRA Ap. V, y en el Art. 675 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3521.

[20] A pesar de que dicho estatuto se derogó, la jurisprudencia atinente al interdicto estatutario se sostiene.

instancias en las que se puede conceder un interdicto estatutario, a saber, que: (1) exista una ley o reglamento que regula dicho uso o actividad; y, (2) la persona o personas señaladas se encuentren realizando un uso o actividad en violación a esa ley o reglamento. *A.R.Pe. v. Rivera*, 159 DPR 429, 444-445 (2003).

B

La Regla 702 de las de Evidencia, 32 LPRA Ap. VI, establece lo relativo al testimonio pericial. En específico, dispone que, "cuando conocimiento científico, técnico o especializado sea de ayuda para la juzgadora o el juzgador poder entender la prueba o determinar un hecho en controversia, una persona testigo capacitada como perita -conforme a la Regla 703- podrá testificar en forma de opiniones o de otra manera".

Es decir, es suficiente con que el testigo tenga el conocimiento, destreza, experiencia, entrenamiento o educación formal, en relación con la materia o el asunto sobre el cual habrá de prestar testimonio, de modo que este sea de ayuda al juzgador. Regla 703(A) de las de Evidencia, 32 LPRA Ap. VI. Así pues, el conocimiento del perito, en el contexto de la solución de controversias jurídicas, constituye "uno de los medios de prueba personales auxiliadores al desempeño judicial". *San Lorenzo Trad., Inc. v. Hernández*, 114 DPR 704, 709 (1983).

Por otra parte, el valor probatorio del testimonio pericial depende de varios factores, entre ellos, "si el testimonio está basado en hechos o información suficiente; si el testimonio es el producto de principios y métodos confiables; […] las calificaciones o credenciales de la persona testigo, […]". Regla 702 de las de Evidencia, 32 LPRA Ap. VI. Consecuentemente, la especialización de un perito en un área determinada es decisiva en lo que respecta al valor probatorio que el juzgador de los hechos le adjudicará a su testimonio. Por tanto, la falta de especialidad incide sobre el peso de la prueba, mas no en la cualificación de un testigo como perito. *Dye-Tex P.R., Inc. v. Royal Ins. Co.*, 150 DPR 658, 664 (2000).

Por otra parte, el juzgador no está obligado a aceptar las conclusiones de un perito, si luego de evaluar su testimonio concluye que no merece credibilidad, tiene la facultad de rechazarlo. *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322, 346 (2010). Además, sobre la evaluación y suficiencia de la prueba, la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley. Regla 110(d) de las de Evidencia, 32 LPRA Ap. VI.

C

La Regla 42.2 de Procedimiento Civil, dispone que:

> [...] Las determinaciones de hechos basadas en testimonio oral **no se dejarán sin efecto a menos que sean claramente erróneas**, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. [...]

32 LPRA Ap. V. (Énfasis nuestro).

Cónsono con ello, es norma reiterada que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba de los tribunales de primera instancia. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006). Al definir lo que constituye pasión, prejuicio o parcialidad, el Tribunal Supremo ha expresado que:

> Incurre en "pasión, prejuicio o parcialidad" aquel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.

*Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

La deferencia hacia el foro primario responde a que es el juez sentenciador quien tiene la oportunidad de recibir y apreciar toda la prueba testifical presentada, de escuchar la declaración de los testigos y evaluar su comportamiento. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009). Sin embargo, la doctrina de deferencia judicial no es de carácter absoluto; se podrá intervenir "cuando la apreciación de la prueba no representare el balance más racional, justiciero y jurídico de la

totalidad de la prueba". *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

III

En cuanto al primer señalamiento de error, Desarrollos sostiene que el foro primario erró al no aplicar la disposición del Art. 14.1 de la Ley de Permisos, la cual prohíbe al tribunal ordenar la paralización de una obra para la cual exista un permiso debidamente expedido.

El expediente ante nuestra consideración revela que, el 22 de octubre de 2022, la OGPe otorgó un permiso de construcción, únicamente a los fines de construir un muro de contención en el solar perteneciente a Desarrollos. No obstante, dicho permiso apercibe a quien lo ostenta que llevar a cabo una construcción no autorizada conllevará que se presenten recursos extraordinarios para la demolición o paralización de las obras no autorizadas o la revocación del permiso. Además, establece que el permiso no legaliza ni autoriza la construcción de obras, ni autoriza aquellas ya construidas y que estén sujetas a un permiso. Por último, dispone que, de identificarse que alguna información ofrecida resulte falsa, suministre hechos o información falsa u ocultare información, entre otros, se procederá con las medidas correctivas establecidas en la Ley de Permisos, así como en otras leyes correspondientes.

Como parte del otorgamiento del permiso para la construcción del muro de contención, el 12 de octubre de 2022, la OPGe expidió una certificación de cumplimiento ambiental por exclusión categórica. Entre sus condiciones generales, la certificación disponía que la operación de la actividad no podía afectar áreas residenciales o zonas de tranquilidad por contaminación sónica. Cónsono con lo anterior, el Art. 14.1 de la Ley de Permisos provee para que una persona afectada pueda presentar un *injunction* para solicitar la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o la paralización de un uso no autorizado, entre otros.

Ciertamente, Desarrollos contaba con el permiso para construir un muro de contención. Ahora bien, coincidimos con la determinación del foro primario a los efectos de que las acciones llevadas a cabo por Desarrollos demostraban su intención de desarrollar unas obras adicionales, las cuales iban excedían el permiso otorgado por la OGPe. Así lo demuestran las fotografías que presentó la Asociación, y así lo determinó el foro *a quo*, quien señaló que Desarrollos llevó a cabo movimientos de corteza terrestre en más de 3,000 metros cuadrados sin los permisos correspondientes, así como corte de árboles y remoción de vegetación sin autorización. Ello, afectó a los miembros de la Asociación.

Adicionalmente, no podemos obviar que la propia parte apelante, en su contestación a la demanda, afirmó que la construcción del muro de contención conllevaba la preparación del terreno y que sus acciones – aun cuando generasen ciertas molestias a la Asociación - siempre estuvieron cobijadas por el permiso otorgado. Tal afirmación no está sostenida por la prueba desfilada en el juicio.

Concluimos que la construcción del muro de contención constituyó solo una parte de la obra total de la finca. No obstante, la OGPe no ha emitido un permiso para la totalidad de la obra que se estuvo realizando. Como bien señaló el foro primario, evidentemente, se trata de una obra fragmentada. Nótese, además, que el permiso obtenido por Desarrollos no incluía llevar a cabo movimientos de tierra ni intervención con la corteza terrestre. Conforme a ello, no albergamos duda alguna respecto a que el foro primario ostenta jurisdicción para atender y adjudicar el *injunction* estatuido en el Art. 14.1 de la Ley de Permisos. También, para ordenar la paralización de una obra iniciada sin contar con los permisos correspondientes, como es el caso ante nos. De igual forma, la Asociación, quien se vio afectada por las actuaciones de la parte apelante, contaba con legitimación activa para impugnar el permiso y la obra que se estaba llevando a cabo.

Mediante el segundo señalamiento de error, Desarrollos plantea que las determinaciones de hechos del foro primario se circunscribieron a la opinión del perito, las cuales no estaban sostenidas por dicho testimonio.

Según el derecho previamente expuesto, el juzgador no está obligado a aceptar las conclusiones de un perito, si luego de evaluar su testimonio concluye que no merecen credibilidad. A su vez, la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho. Del expediente ante nuestra consideración surge que el ingeniero González Fortuño fue el perito que presentó la Asociación. Este fue calificado como perito en ingeniería ambiental y sobre asuntos relacionados a permisos ante la OGPe. Luego de visitar el lugar donde se construía el muro de contención, este declaró que observó indicios de construcción adicionales al muro de contención.

Por su parte, Desarrollos tuvo la oportunidad de contrainterrogar ampliamente al ingeniero. Nótese, además, que Desarrollos tuvo la oportunidad de presentar un perito para controvertir el testimonio del perito de la Asociación; ello, a los fines de restarle credibilidad. No lo hizo. Así pues, al foro primario le mereció entera credibilidad el testimonio pericial del ingeniero González Fortuño. No podemos olvidar que las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas. Cónsono con lo anterior, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, no debemos intervenir con la apreciación de la prueba del foro primario.

En el último señalamiento de error, la parte apelante aduce que el foro primario erró al denegar la moción de reconsideración, solicitud de determinaciones de derecho y de hechos adicionales, aun cuando en la misma señaló que el perito se había contradicho. No obstante, aun en el caso de que el testimonio del ingeniero González no fuera perfecto, no cabe duda de que este contaba con la pericia para concluir que, en efecto, lo que intentaba la parte apelante era fraccionar los trabajos que realizaba en su predio, bajo el manto de un permiso para la construcción de un muro de

contención. Tanto su testimonio como las fotos que fueron sometidas en evidencia reflejan el alcance de los trabajos que llevó a cabo Desarrollos y cómo estos excedieron el permiso otorgado. En fin, la decisión del foro primario merece nuestra deferencia, por lo que no intervendremos con las determinaciones de hechos realizadas por dicho foro.

IV

Por las razones antes expuestas, **confirmamos** la *Sentencia* emitida y notificada el 25 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Ponce.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones